UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| LORI ANN PARISH, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 4:19-cv-01658-JHE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Lori Ann Parish ("Parish") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Parish timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Parish filed her applications for DIB and SSI on January 5, 2016, alleging she became unable to work beginning October 1, 2015. (Tr. 73, 75, 226-35, 299). The Agency initially denied her claim on March 30, 2016. (Tr. 99-103). Thereafter, Parish filed a written request for a hearing (tr. 109-10), and in January and August 2018, Parish appeared and testified (tr. 31-49). After the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

hearing, the Administrative Law Judge ("ALJ") denied Parish's claim on September 28, 2018. (Tr. 14-30). Parish sought review by the Appeals Council, but it declined her request for review on August 5, 2019. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On October 9, 2019, Parish initiated this action. (*See* doc. 1).

Parish was forty-eight-years-old when the ALJ issued his decision. (Tr. 14, 55). She has a high school education (tr. 58-59, 300) and relevant past work experience as a fast food services manager, fast food worker, cashier, and shipping-and-receiving weigher (tr. 45-46, 70, 270-81, 285-94, 308-15). Parish alleges she is unable to work due to breaking her left hip after falling on ice. (Tr. 73, 75, 226-35, 299).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

>       by the [Commissioner];
> (4)   whether the claimant can perform his or her past work; and
> (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Parish met the insured status requirements of the Social Security Act through December 31, 2020, and that Parish had not engaged in substantial gainful activity since the alleged onset date of October 1, 2015. (Tr. 19). At Step Two, the ALJ found that, during the relevant period, Parish had the following severe impairment: gastroesophageal reflux disease, peptic ulcer disease, hypertension, cirrhosis, neuropathy, pancytopenia, and right shoulder impingement. (Tr. 19-20). At Step Three, the ALJ found Parish did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to Step Four, the ALJ determined Parish's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. §

404.1545(a)(1). The ALJ determined that Parish had the RFC to perform a limited range of sedentary work as defined in 20 C.F.R. §§404.1567(a) and 416.967(a). (Tr. 20-23). The ALJ determined Parish could perform sedentary work except occasionally climb (but not ladders), balance, stoop, kneel, crouch, crawl; precluded from concentrated exposure to extremes of temperature and continuous vibrations; and precluded from work around unprotected heights and should avoid hazardous, dangerous machinery. (*Id.*).

At Step Four, the ALJ determined Parish was unable to perform any past relevant work. (Tr. 23). At Step Five, the ALJ determined, based on Parish's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Parish could perform. (Tr. 24-25). Therefore, the ALJ determined Parish had not been under a disability and denied Parish's claim. (Tr. 25).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination that Parish failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Specifically, Parish raises three issues, contending: (A) substantial evidence does not support the ALJ's Step Two finding that Parish's status post left hip fracture was not a severe impairment

5

(doc. 16 at 17); (B) the ALJ erred when he failed to elicit testimony from the vocational expert regarding a sit/stand opinion or include a work limitation allowing Parish to elevate her legs (*id.* at 19); and (C) the ALJ erred when he did not include in Parish's RFC assessment a limitation that she would be off task at least ten percent of the workday (*id.* at 20).

### A. Whether Substantial Evidence Supports the ALJ's Step Two Finding that Parish's Status Post Left Hip Fracture Was Not a Severe Impairment

Parish contends the ALJ's finding that her hip impairment was not a severe impairment is not supported by substantial evidence because her "residual issues with her hip have lasted for more than twelve months[] and continue to this day." (Doc. 16 at 17). The ALJ relied on Dr. Eric Schmitter's opinion that parish's hip impairment resulted in no limitations six months after her February 20, 2015 surgery and that as of January 2018, she had no hip limitations. (Tr. 20, 711, 713, 719).

At Step Two of the sequential evaluation, the ALJ determines whether a claimant has a severe impairment, defined as an impairment significantly limiting the claimant's abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c), 404,1521(a). A claimant bears the burden to establish these conditions significantly limit her ability to perform basic work functions. 20 C.F.R. §§ 404.1520(a), (c), 404.1521(a); *Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987) (recognizing an impairment cannot be severe if it has only a minimal impact). Examples of basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. See 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Further, to be considered a severe impairment at step two, an impairment also must be severe for at least 12 consecutive months. See 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii), 416.905(a), 416.909, 416.920(a)(4)(ii); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002).

The ALJ relied on Dr. Schmitter's opinion that Parish's hip impairment resulted in no

orthopedic limitations six months after her February 20, 2015 surgery and that, as of January 2018, she had no hip limitations. (Tr. 20, 711, 713, 719). The medical records indicate that a week after surgery, x-rays showed the hardware in good position. (Tr. 414). In March 2016, thirteen months later, x-rays revealed no acute abnormality. (Tr. 500). In December 2016, almost two years after Parish's surgery, a radiologist compared a current study to a May 2015 study and noted no new findings were present, no discrete acute findings were identified, and no complications were seen. (Tr. 504).

Two weeks after the alleged onset date and more than seven months after surgery, Parish saw her primary care physician Dr. Karl Peter Uy on October 14, 2015. (Tr. 483-85). She did not complain of hip pain, which suggests her pain was controlled with medication. (*Id.*). Treatment notes from November 2015 (tr. 487), January 2016 (tr. 489), February 2016 (tr. 491), March 2016 (tr. 534, 536, 538), April 2016 (tr. 531), May 2016 (tr. 529), July 2016 (tr. 527), August 2016 (tr. 521, 524), September 2016 (tr. 519), and October 2016 (tr. 516) all lack any complaints of hip pain. It appears the only time Parish complained of hip pain to Dr. Uy was in November 2016 after falling (tr. 513) and in December 2016 (tr. 505). Parish's statement in March 2016 to Dr. Oguntuyo that she had been experiencing left hip pain of six to eight out of ten severity for the past several months (tr. 496) is not corroborated by her treating physician's records. Therefore, it was reasonable for the ALJ to discount the opinion of Dr. Oguntuyo, a one-time examiner. *See* 20 C.F.R. §§404.1527(e)(2)(iii), 416.927(e)(2)(iii).

Additionally, Dr. Uy's treatment notes from 2017 and 2018 do not reflect Parish consistently complained of hip pain or had uncontrolled pain. (Tr. 598-606, 609-18, 678-81, 683-97, 722-33, 746-48, 877-82). In March 2017, Parish complained of hip pain for the past two weeks after she got up from a siting position and heard a loud pop. (Tr. 607). Dr. Uy ordered an x-ray,

7

but there is no mention of x-ray results or left hip pain at Parish's April 2017 appointment. (Tr. 604-06). There do not appear to be any other complaints of hip pain in 2017 and 2018.

For the reasons explained above, the ALJ reasonably relied on Dr. Schmitter's opinion in finding no severe impairment related to Parish's hip. (Tr. 19-20). However, even if it was an error for the ALJ not to find Parish's status post-left hip fracture was a severe impairment, it was harmless because the ALJ found other impairments to be severe. (Tr. 19). Finding other impairments to be severe allowed the ALJ to proceed with the remaining steps of the sequential evaluation process. *See Delia v. Comm'r of Soc. Sec.*, 433 F. Appx. 885, 887 (11th Cir. 2011). Furthermore, the ALJ's finding at Step Three that Parish did not have an impairment or *combination of impairments* that met or medically equaled a listed impairment (tr. 20) is sufficient to show that the ALJ considered the combined effect of Parish's impairments, including her status post left hip fracture, which the ALJ discussed at Step Two and concluded was not a severe impairment. (Tr. 19-20). *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002).

  **B. Whether the ALJ Was Required to Elicit Testimony from the Vocational Expert Regarding a Sit/Stand Option or Include a Work Limitation Allowing Parish to Elevate Her Legs**

Parish contends the ALJ erred when he did not ask the vocational expert to clarify the availability of a sit/stand option for jobs at the unskilled level and that the ALJ should have included a limitation allowing her to elevate her legs. (Doc. 16 at 19). As to the sit/stand option, Parish points to no medical evidence or treating physician opinion that she would need a sit/stand option. (*See id.* at 19-20). Therefore, the ALJ was not required to include such a limitation in the hypothetical posed to the vocational expert or ask the vocational expert to clarify the availability of a sit/stand option for jobs at the unskilled level. SSR 83-12, 1983 WL 31253 at *12 (1983). As to Parish's implication that the ALJ should have included an option to elevate her legs in the RFC

(*see* doc. 16 at 19-20), the ALJ was not required to accept Parish's subjective allegations, and there is nothing in Dr. Oguntuyo's examination findings or her treating physicians' records to support this requirement. The ALJ properly considered whether Parish's allegations were consistent with the medical and other evidence and concluded they were not. (Tr. 20-23).

### C. Whether the ALJ Was Required to Include in Parish's RFC Assessment a Limitation That She Would Be Off Task At Least Ten Percent of the Workday

Finally, Parish argues the ALJ should have included a limitation that she would be off task for at least ten percent of the workday because she needs to elevate her legs and vomit frequently. (Doc. 16 at 20). Again, Parish cites only to her testimony, which is insufficient in light of the absence of medical evidence. When there is no support for this in the record, the ALJ is not pose a hypothetical to the VE. *See Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 828 (11th Cir. 2017).

### IV. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Parish's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED**. A separate order will be entered.

DONE this 12th day of March, 2021.

                                                              **JOHN H. ENGLAND, III**
                                                              UNITED STATES MAGISTRATE JUDGE

10